## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:21-CV-00689-RSE

**BIRGIT K.**                                                                                       **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                                                         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Birgit K.'s ("Plaintiff's") application for disability insurance benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Plaintiff (DN 14) and the Commissioner (DN 18) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 9).

### I. Background

Plaintiff is 56 years old, lives in Elizabethtown, Kentucky, and has a high school education. (Tr. 267, 270, 272). Plaintiff is currently employed part-time as a customer service representative at Inspiritec. (Tr. 272). She has been with Inspiritec since May 2016, and until February 2019 worked in a full-time capacity. (Tr. 230). Plaintiff was previously employed in custodial services

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

from 1999 until 2016. (Tr. 272). On July 18, 2019, Plaintiff protectively filed an application for disability insurance benefits ("DIB") from the Social Security Administration under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3) ("Act"), alleging disability beginning on July 15, 2019. (Tr. 219). Plaintiff claimed she could not perform work at substantial gainful levels due to migraines, post-traumatic stress disorder ("PTSD"), anxiety, and vertigo. (Tr. 271). Her application was denied initially on December 18, 2019 (Tr. 117) and upon reconsideration on February 24, 2020 (Tr. 127). At Plaintiff's request, a hearing was conducted before Administrative Law Judge William Zuber ("ALJ Zuber") in Louisville, Kentucky on October 27, 2020. (Tr. 38–82). Plaintiff appeared in person and was represented by attorney Kirsten Brown. (Tr. 38). ALJ Zuber issued an unfavorable decision on January 8, 2021. (Tr. 13–32).

ALJ Zuber applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since July 15, 2019, the alleged onset date. (Tr. 18). Second, Plaintiff has the severe impairments of migraines, vertiginous disorder, post-concussion syndrome, hearing loss, tinnitus, right shoulder degenerative joint disease, post-traumatic stress disorder, anxiety, and depression. (Tr. 19). Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). ALJ Zuber then determined Plaintiff has the residual functional capacity ("RFC") to perform "medium work," as defined in 20 C.F.R. 404.1567(c), with the following limitations:

> She can perform routine tasks with no more than occasional overhead reaching with the right upper extremity; she can have no more than occasional exposure to dangerous machinery or unprotected heights; she can have no more than DOT level-three noise exposure; she can tolerate occasional interactions with co-workers, supervisors, or the general public; she can tolerate occasional changes in the work routine or environment; and she can sustain concentration, persistence,

and pace for periods of two hours at a time.

(Tr. 22). Fourth, ALJ Zuber found that Plaintiff can perform her past relevant work as a housekeeping cleaner and hospital housekeeper, as neither would require performance of work-related activities precluded by her RFC. (Tr. 31).

Based on this evaluation, ALJ Zuber concluded that Plaintiff was not disabled, as defined in the Social Security Act, from July 15, 2019 through the date of his decision. (*Id.*). Plaintiff sought review of ALJ Zuber's decision. (Tr. 213–15). The Appeals Council declined review on October 12, 2021. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations

omitted).

### III. Analysis

Plaintiff raises three claims of error. First, she argues ALJ Zuber should have accounted for the severely limiting effects of her migraines in his RFC determination. (DN 14-1, at PageID # 756). Second, Plaintiff claims ALJ Zuber improperly relied on vocational testimony contradicted by the Dictionary of Occupational Titles ("DOT") without reconciling, or even addressing, the inconsistencies. (*Id.*). Third, Plaintiff alleges ALJ Zuber erred in evaluating her credibility by failing to consider her "strong work history." (*Id.*).

#### A. Residual Functional Capacity

Plaintiff claims ALJ Zuber's RFC determination is not supported by substantial evidence because he failed to account for limitations caused by headaches and migraines. (DN 14-1, at PageID # 758). The Commissioner submits that ALJ Zuber acknowledged Plaintiff's alleged limitations and "appropriately considered her treatment, diagnostic test results, and work activity in finding she was not as limited as she claimed." (DN 18, at PageID # 782).

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases his RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Plaintiff does not allege that ALJ Zuber failed to consider her migraines altogether. Rather, she criticizes his failure to provide specific accommodations for them in his RFC finding. But an

4

ALJ need only create a logical bridge between the record evidence and his findings, and if substantial evidence supports them, this Court must affirm the decision despite a claimant's suggestion that the evidence could support a contrary conclusion. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

ALJ Zuber clearly considered Plaintiff's history of migraines and discussed it at length. (*See* Tr. 23 ("The claimant is seen by specialists (ENT and neurologist) for vertigo and migraines. She described having ongoing migraines associated with such things as weather changes. She estimated currently having 3-4 migraines per week that could last from hours . . . to a day or two at a time. . . . she said that she has nausea and light sensitivity because of migraines."); Tr. 24 ("[T]reatment records reflect that the claimant subjectively reported that 'sun from window' and 'lights' at work[] increased her occurrence of migraines[.] . . . She requested a [doctor's] statement for a 'shield' at work, as well as refill of migraine medication."); Tr. 25 ("The claimant has reported ongoing frequent migraines during primary care follow-up."); ("The claimant has had referral to neurological services for complaints of vertigo and migraines. Her clinical assessments have included migraines[.] . . . Along with oral medications, she has been prescribed injections for headaches.").

But ALJ Zuber also cited to considerable evidence supporting his determination that Plaintiff's migraines may be less severe than she alleges. (*See* Tr. 24 ("Examination [around October 2018] revealed her generally in 'no acute distress.' Her neurologic and psychiatric findings were within normal limits."); ("In April 2019, the claimant reported that her migraines had 'improved' since decreasing her work hours to 20-hours per week (though with indication that her migraines had been 'uncontrolled' for 6 months or more). While she previously had [] neurology care, she declined treatment at that time. Examination revealed her generally in 'no

5

acute distress.'"); Tr. 25 ("While [sic] telehealth appointment, there was indication that she was generally in no acute distress. She continued to be prescribed headache medications."); ("She has subjectively reported frequent migraines. However, when seen around June 2020, she indicated that prescribed medication was helping to lessen the headache 'frequency' and 'severity.'"); ("When seen for ENT follow-up (September 2020), the claimant reported having long history of 'intermittent' migraine headaches."); Tr. 26 ("During recent follow-up, she has continued to subjectively report frequent migraine headaches. However, there is no indication that she has had recurrent emergency room visits for such.").

In his assessment, ALJ Zuber also considered that no treatment provider has recommended any restrictions or limitations in work-related activities due to migraines, and the fact that Plaintiff continues to work on a part-time basis. (Tr. 26). Even so, ALJ Zuber limited Plaintiff to "medium" work with several additional limitations. Plaintiff suggests ALJ Zuber should have provided that she must be absent from work "during the peak period of her headaches," (DN 14-1, at PageID # 758), but ALJ Zuber appropriately found that such a severe limitation was not supported by the weight of the evidence. Moreover, impartial vocational expert William Kiger ("VE Kiger") testified that absence three to four times monthly on an ongoing basis "would lead to job loss." (Tr. 71). ALJ Zuber's decision to reject this limitation, which would have eliminated the possibility of competitive work and rendered Plaintiff conclusively disabled, was not error.

Overall, ALJ Zuber's RFC determination demonstrates thoughtful consideration of the record evidence. He provided appropriate limitations based on Plaintiff's medically determinable impairments, including her migraines. While evidence certainly exists that Plaintiff suffers migraines, some perhaps debilitating, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey*, 987 F.2d at 1233. Despite

6

evidence in the record that may support a contrary conclusion, ALJ Zuber thoroughly considered Plaintiff's medical records and adequately articulated his findings in accordance with the regulations. The Court finds no error.

B. Past Relevant Work

ALJ Zuber found that Plaintiff could perform her past relevant work in custodial services because neither position (housekeeping cleaner and hospital housekeeper) exceeded her residual functional capacity as actually or generally performed. (Tr. 31). In making this determination, Plaintiff claims ALJ Zuber improperly relied on VE Kiger's vocational testimony, which she suggests is contradicted by the DOT. (DN 14-1, at PageID # 764). During the hearing, VE Kiger testified that a hypothetical individual with Plaintiff's RFC—which would allow only for occasional overhead reaching with the right upper extremity—could perform both of her prior custodial positions despite their requirements of "frequent" overhead reaching. (Tr. 70–71). Plaintiff claims ALJ Zuber's failure to acknowledge and reconcile this inconsistency in VE Kiger's testimony "makes judicial review impossible." (DN 14-1, at PageID # 766).

The Commissioner counters that ALJ Zuber's errors, if any, were harmless for several reasons. First, the Commissioner suggests that because VE Kiger's testimony accurately described Plaintiff's past work as actually performed, any error regarding its general performance is irrelevant. (DN 18, at PageID # 789). The Commissioner also positions that Plaintiff waived this issue by failing to address it during cross-examination at the hearing. (*Id.* at PageID # 789–90).

The Commissioner is correct that arguments regarding vocational expert testimony are waived if not raised during the hearing. *See Hammond v. Chater*, 116 F. 3d 1480 (6th Cir. 1997) ("Plaintiff also objects that the jobs listed by the VE, and used by the ALJ to deny benefits, are all at least semi-skilled, whereas the ALJ found her able to do only unskilled work. First, plaintiff

waived this argument by failing to raise it to the VE at the hearing."). Moreover, the Court agrees that any error in crediting VE Kiger's testimony regarding Plaintiff's past relevant work was harmless.

Social Security Ruling 00-4P provides for how conflicts between a vocational expert's testimony and the DOT should be resolved:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. . . . Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4P (S.S.A. Dec. 4, 2000). SSR 00-4P also provides "reasonable explanations" that may explain such conflicts. *Id.* Because a vocational expert's training and experience can inform his opinion, conflicts may occur when testifying about information not listed in the DOT, "since the DOT does not contain information about all occupations." *Id.* Likewise, such conflicts may arise when the expert learns from other reliable publications, directly from employers, or from the expert's professional experience "information about a particular job's requirements or about occupations not listed in the DOT," or when the expert testifies to the range of requirements of a particular job as it is performed in specific settings, since the DOT only accounts for the maximum requirements of occupations as generally performed. *Id.*

While SSR 00-4p sets forth the actions required by an ALJ when there is an "apparent" conflict between VE testimony and the DOT, the Sixth Circuit has held that where a conflict is not apparent and a claimant fails to bring the conflict to the ALJ's attention, the ALJ is not required to "conduct an independent investigation into the testimony of witnesses to determine if they are

8

correct" nor "explain how the conflict was resolved." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Here, consistent with SSR 00-4p, ALJ Zuber asked VE Kiger if there was a conflict. (Tr. 74). VE Kiger testified that there were no inconsistencies between his testimony and the DOT but noted that some of his testimony was gleaned from his professional experience, rather than the DOT. (*Id.*). Under these circumstances, a conflict in the VE's testimony would not be apparent. *See Martin*, 170 F. App'x at 374. Because Plaintiff did not bring the conflict to ALJ Zuber's attention at the hearing, he was not required to confirm the accuracy of VE Kiger's testimony to uncover, and then resolve, the non-apparent conflict.

Even so, ALJ Zuber does appear to address the discrepancy between VE Kiger's testimony and Plaintiff's actual performance of her past work, albeit vaguely:

> [T]he undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupations Titles (DOT) and provided a reasonable explanation for the instance that it differed. In this respect, the vocational expert clarified, [] the claimant had performed her job differently than as classified in the DOT[.] . . . The administrative Law Judge finds this to be a reasonable explanation for filling in the gaps from the DOT.

(Tr. 31). Because ALJ Zuber was not required to resolve the non-apparent conflict at all, the Court finds this acknowledgement more than sufficient. Furthermore, Plaintiff has not alleged, nor presented evidence, that her prior custodial work required more than occasional overhead reaching with the right upper extremity. At best, this bolsters VE Kiger's testimony regarding her actual performance of the work, and at worst, it renders the conflict even less apparent. The Court finds no error in ALJ Zuber's assessment of Plaintiff's ability to perform her past work.

### C. Credibility Assessment

Finally, Plaintiff argues ALJ Zuber's credibility assessment was flawed because he failed to consider her "strong work history." (DN 14-1, at PageID # 767). The Commissioner submits that ALJ Zuber did consider Plaintiff's work history, but appropriately declined to correlate it with

9

her character for truthfulness. (DN 18, at PageID # 787).

When forming the RFC, an ALJ must assess the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1520c, 404.1529(a). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

Plaintiff suggests ALJ Zuber erred in failing to consider her "exemplary work history demonstrating 20 uninterrupted years of employment" before the alleged onset of her disability. (DN 14-1, at PageID # 767). First, while an ALJ may consider a claimant's work history in assessing both credibility and motive for seeking disability, *see Thompson v. Comm'r of Soc. Sec.*, No. 2:16-CV-546, 2017 WL 3446490, at *9 (S.D. Ohio Aug. 11, 2017) (counting cases), it is only one of many factors to be considered. *See Thompson v. Astrue*, No. 09-519, 2010 WL 3661530 (W.D. Pa. Sept. 20, 2010) ("[A] claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility."). Moreover, nothing in the regulations requires an ALJ to explicitly discuss a claimant's work history when assessing the claimant's credibility.

Although ALJ Zuber did not discuss Plaintiff's work history while evaluating her

10

subjective complaints, he clearly considered it throughout his decision. (*See* Tr. 18 ("At the hearing, the claimant confirmed part-time work activity at InspiriTec since February 2019 (currently 18-hours per week) (though had previously worked fulltime) . . . At the hearing, the claimant described being given various work accommodations[.]"); Tr. 23 ("The Claimant provided an overview of her work history during the relevant time-period[.] . . . she had worked for PCSI [] where she was a housekeeper working 38-39 hours per week in a hospital setting. . . . Prior to that, she had worked at Lakeview Center where she began as a janitor/cleaner (for about 6 years) and became an inspector[.]"); Tr. 29 ("While she has reduced her hours to part-time work, she continues to perform her job in customer service at the call center."); Tr. 30 ("There was a statement by the claimant's employer indicating that the claimant had called out sick ('1-2 days per week') prior to having her hours reduced to 18-hours per week but there was no indication that attendance was a current issue with her part-time work[.] . . . Moreover, it appears that she has continued in this employment.")). Other courts have found this level of discussion sufficient. *See Neff v. Saul*, No. 8:18-cv-3040-T-SPF, 2020 WL 1181952, at *5–6 (M.D. Fla. Mar. 12, 2020) (finding harmless error where ALJ did not specifically discuss plaintiff's work history in credibility analysis); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (deeming ALJ's silence on claimant's significant work history "not enough to negate the substantial evidence supporting the adverse credibility finding").

      The undersigned finds no error in ALJ Zuber's credibility assessment. He was not required to discuss Plaintiff's work history when analyzing her subjective complaints, but it is clear he took her work history into account numerous times throughout his decision. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that when sufficient factual findings are made elsewhere, an ALJ need not "spell out every fact a second time").

## ORDER

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

*Signature*

Regina S. Edwards, Magistrate Judge
United States District Court

August 15, 2022

Copies:    Counsel of Record